Susan E. O. BREAKEFIELD, Petitioner,

v.

DISTRICT OF COLUMBIA.

No. 23456.

United States Court of Appeals, District of Columbia Circuit.

Argued June 26, 1970.

Decided Aug. 7, 1970.

Certiorari Denied Feb. 22, 1971.

See 91 S.Ct. 871.

---

Mr. Nicholas A. Addams, Washington, D. C., with whom Mr. John I. Coldren, III, Washington, D. C., was on the brief, for petitioner.

Mr. Henry E. Wixon, Asst. Corporation Counsel for the District of Columbia, with whom Messrs. Charles T. Duncan, Corporation Counsel at the time the brief was filed, and Hubert B. Pair, Acting Corporation Counsel, were on the brief, for respondent.

Before McGOWAN, ROBINSON and MacKINNON, Circuit Judges.

PER CURIAM:

■ Tendered for our resolution is the question whether the Congress, in legis-

lating for the District of Columbia,[1] was constitutionally empowered to enact the provisions of the District of Columbia Income and Franchise Tax Act of 1947[2] which impose an income tax on individuals residing in the District notwithstanding that they then had and now have no elected representative in the Congress.[3] Our petitioner is a citizen of the United States who is and since 1964 has been an adult domiciliary resident of the District, as such without right to vote for a representative in either House of the Federal Legislature. Asserting that taxation by and representation in the tax-imposing body are constitutionally inseparable, petitioner sought a refund of the District income tax she paid for the calendar year 1967. The District of Columbia Tax Court sustained the tax and, on review here, so do we.

Petitioner's position embodies a sizeable array of arguments drawn from both constitutional and histoircal sources.[4] The Tax Court, however, felt "obligated to decide this case for respondent on the basis of [Supreme Court] authorities[5] which petitioner claims are 'clearly erroneous' and 'should be overruled.'" We share the Tax Court's sensitivity to an abiding obligation to following binding

1. "The Congress shall have Power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District. * * *" U.S.Const., art. I, § 8, cl. 17.

2. 61 Stat. 331 (1947), as amended, D.C. Code § 47–1551 *et seq.* (1967).

3. See note 10, *infra*.

4. As summarized by the Tax Court,
   Petitioner's main argument rests on an inference from Section 2 of the 14th Amendment providing that "Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed." Petitioner says that this provision "that individuals [i. e. Indians] who are not taxed are not to be counted in determining the weight of each taxed citizen's vote clearly shows that the Constitution recognized the principle that taxation and representation are inseparable",

   citing the "one-man one-vote" decision, Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).
   Petitioner recognizes the exclusive power of Congress to legislate for the District, but "maintains that such power must be carefully exercised in a constitutional manner" and in relation to the other provisions of the Constitution preserving the rights of persons and of citizens. Finally, petitioner urges that it is a "fundamental right" to have representation within the taxing authority; that this right is preserved by the Ninth Amendment provision "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people", and that pre-constitutional precedents in England and the American colonies, from the Magna Charta to the Declaration of Independence, back up her position. (footnotes omitted)

5. Notably those cited *infra* notes 6, 8.

precedent, and affirm the judgment under review without undertaking the redefinition of the law petitioner requests.

As far back as 1820, the Supreme Court, through Chief Justice Marshall, declared unanimously that those choosing residence in the District of Columbia have "voluntarily relinquished the right of representation, and * * * adopted the whole body of Congress for * * * [their] legitimate government. * * * "[6] Throughout the many years since, the Court, notwithstanding this lack of representation, has consistently upheld the "full and unlimited jurisdiction [of Congress], both of a political and municipal nature, over the District of Columbia."[7] In 1922, the Court, again unanimously, upheld an act of Congress[8] laying a tax on intangible personal property of persons residing or doing business in the District against the contention, *inter alia*, "that the act is void, because it subjects the residents of the District to taxation without representation."[9] Expressing its opinion through Mr. Justice Brandeis, the Court said:

It is sufficient to say that the objection is not sound. There is no constitutional provision which so limits the power of Congress that taxes can be imposed only upon those who have political representation. And the cases are many in which laws levying taxes for the support of the government of the District have been enforced during the period in which its residents have been without the right of suffrage.[10]

And only last year we ourselves found "insubstantial" the claim that the District's Mayor-Commissioner and the members of the City Council were illegally appointed "because the citizens of the District have not been given the opportunity by popular vote to elect persons to the positions held by" them.[11]

Petitioner's countervailing thesis questions both the original soundness of the foregoing Supreme Court determinations and their continuing vitality in the light of later Supreme Court pronouncements. We think, however, that appellant presents those contentions in the

---

6. Loughborough v. Blake, 18 U.S. (5 Wheat.) 317, 324, 5 L.Ed. 98 (1820).

7. Shoemaker v. United States, 147 U.S. 282, 300, 13 S.Ct. 361, 37 L.Ed. 170 (1893). See also Kendall v. United States, 37 U.S. (12 Pet.) 524, 619, 9 L.Ed. 1181 (1838); Binns v. United States, 194 U.S. 486, 491–492, 48 L.Ed. 1087 (1904); Berman v. Parker, 348 U.S. 26, 31–32, 75 S.Ct. 98, 99 L.Ed. 27 (1954). And see District of Columbia v. John R. Thompson Co., 346 U.S. 100, 109, 73 S.Ct. 1007, 97 L.Ed. 1480 (1953), and text *infra* at note 10.

8. Heald v. District of Columbia, 259 U.S. 114, 42 S.Ct. 434, 66 L.Ed. 852 (1922).

9. *Id.* at 124, 42 S.Ct. at 435.

10. *Id.* (footnote omitted). That the Court's view on the constitutional aspects extended to taxation of income as well as of intangibles is plain from the following passage from the opinion:
   Residents of the District lack the suffrage and have politically no voice in the expenditure of the money raised by taxation. Money so raised is paid into

the Treasury of the United States, where it is held, not as a separate fund for the District, but subject to the disposal of Congress, like other revenue raised by Federal taxation. The objection that the tax is void because of these facts, is fundamental and comprehensive. It is not limited in application to the tax on intangibles, but goes to the validity of all taxation of residents of the District. If sound, it would seem to apply not only to taxes levied upon residents of the District for the support of the government of the District; but also to those taxes which are levied upon them for the support generally of the government of the United States.

11. Carliner v. Commissioner of District of Columbia, 134 U.S.App.D.C. 43, 44, 412 F.2d 1090, 1091, cert. denied, 396 U.S. 987, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969). See also Hobson v. Tobriner, 255 F.Supp. 295, 298–299 (D.D.C.1966), petition for review for mandamus denied *sub nom.*, Hobson v. Gasch, No. 20,838 (D.C.Cir. Sept. 29, 1966), cert. denied, 386 U.S. 914, 87 S.Ct. 863, 17 L.Ed.2d 787 (1967).

wrong forum. Save only for the exceptional cases where the proper decisional result is very clear,[12] it is for the Supreme Court, not us, to proclaim error in its past rulings, or their erosion by its adjudications since.

Affirmed.

---

12. *E. g.*, Flemming v. South Carolina Elec. & Gas Co., 224 F.2d 752, 753 (4th Cir. 1955), aff'd, 351 U.S. 901, 76 S.Ct. 692, 100 L.Ed. 1439 (1956) ; Barnette v. West Virginia State Bd. of Educ., 47 F.Supp. 251, 252–253 (S.D.W.Va.1942), aff'd, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).